# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50202 |
| | ) | |
| Damon Rucker, | ) | |
| | ) | |
| Movant. | ) | Judge Frederick J. Kapala |

## ORDER

Rucker's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] is denied. Certificate of appealability is denied. Rucker's motions for evidentiary hearing [5] and to appoint counsel [6] are denied. This case is closed.

## STATEMENT

A jury convicted Damon Rucker of witness retaliation, in violation of 18 U.S.C. § 1513(b)(1), after he attacked a co-defendant who testified at his sentencing hearing in a separate prosecution for attempting to possess, with intent to distribute, two kilograms of cocaine. Rucker is serving a 240-month sentence consecutive to his sentence for the cocaine offense. Before the court is Rucker's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that his trial and appellate counsel provided him with ineffective assistance. For the reasons which follow, Rucker's § 2255 motion is denied.

### I. BACKGROUND

In the former case, Rucker pleaded guilty to attempting to purchase two kilograms of cocaine from his co-defendant, Celestino Alvarez–Montejano, for $64,000. At a sentencing hearing conducted on November 8, 2012, the government presented the testimony of Alvarez in support of its position that an additional fifteen kilograms of cocaine should be attributed to Rucker as relevant conduct. After cross-examining Alvarez, Rucker's counsel asked for a continuance so that he could further investigate the veracity of Alvarez's testimony, unless the court was prepared to say that it would not consider Alvarez's testimony in assessing Rucker's relevant conduct. The court indicated that it was not prepared to disregard Alvarez's testimony and continued the sentencing hearing to another date.

When the sentencing hearing continued on December 12, 2012, the parties stipulated that a total of three and one-half to five kilograms of cocaine should be attributed to Rucker based on his relevant conduct, thereby increasing Rucker's base offense level by two and increasing the advisory sentencing guidelines range from a range of 63 to 78 months to a range of 78 to 97 months.

Rucker's counsel characterized the agreed-upon quantity as a "compromise." The court sentenced Rucker to a within-guidelines prison term of 87 months.

Eight days later, Rucker and Alvarez were placed in the same holding cell. Alvarez was handcuffed and shackled, Rucker was not. Rucker slammed Alvarez's head against a concrete wall, Alvarez collapsed, began to convulse, and blood ran from his head. As a result of this conduct, Rucker was charged with witness retaliation.

During a pretrial conference which Rucker attended with his counsel, the parties informed the court that they intended to enter into the following stipulation and present it to the jury at trial:

> [O]n November 8th, 2012, Celestino Alvarez, also known as Victim A, truthfully testified against defendant Damon Rucker during an official proceeding, namely, the first day of Damon Rucker's sentencing hearing . . . . Celestino Alvarez's truthful testimony contributed to defendant Damon Rucker receiving an additional 24 months of imprisonment.

At trial, the government presented the testimony of Alvarez, as well as two other inmates in the holding cell at the time of the attack, Tony Walton and William "Joe" Farrell. According to Alvarez, he first became aware of Rucker's presence when Rucker remarked, "There's the trick" or "That's the trick right there." Alvarez understood the comment to be a reference to the fact that he had testified against Rucker. According to Walton, Rucker had declared, "You like to get on the stand on people." Farrell testified that Rucker had stated, "You're going to have to show your paperwork wherever you go." The government also played a video recording of the incident in the holding cell for the jury. A stipulation, verbatim to the stipulation set out above, was read to the jury.

The defense did not present any witnesses, but argued that the government's evidence did not show that Rucker attacked Alvarez with the intent to retaliate against him for his testimony at Rucker's sentencing. The jury found Rucker guilty.

In his sentencing memorandum, Rucker's counsel challenged his classification as a career offender, U.S.S.G. § 4B1.1, arguing that his prior conviction for home invasion was not a crime of violence.[1] This court rejected the challenge specifically finding that at the time of his conviction in 1997, the home invasion statute, 720 ILCS 5/12-1(a)(1) & (2), had as an element the use, attempted use, or threatened use of physical force against the person of another and, therefore, qualifies as a crime of violence under § 4B1.2(a)(1). This court explained its analysis is detail:

> To be precise, under Section 12-11(a)(1), a defendant commits home invasion when he uses force or threatens the imminent use of force upon any person, and, therefore, the requirements of Section 4B1.2(a)(1) are met.
>
> As for a conviction under Section 12-11(a)(2), although that subsection does not specifically use the word force, it does require that the defendant intentionally causes any injury to any person in the dwelling which necessarily involves the use of

---

[1]Defense counsel did not take issue with the conclusion that Rucker's other predicate conviction used to classify him as a career offender was a "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b).

2

force against that person. In fact, in United States v. Dismuke, the cite for which is 593 F.3d 582, the Seventh Circuit explained that crimes committed with the purpose of inflicting physical harm on another fall within the first part of the definition of a crime of violence, that is, those offenses that have as an element the use, attempted use, or threatened use of physical force against the person of another.

Moreover, even if it is possible to conceive of a situation in which a defendant could intentionally cause injury to another person without the use of physical force, cases such as Dismuke and United States v. Hampton, 675 F.3d 720, made clear that the categorical approach focuses on the generic crime as ordinarily committed, so that the court is not required to consider every conceivable violation of a statute. Thus, a conviction under Section (a)(2) also qualifies as a crime of violence pursuant to Section 4B1.2(a)(1).

Furthermore, even if the court were to somehow find that a violation of Section 12-11(a)(2) should not be considered a crime of violence, that would merely create a divisible statute, meaning that the statute describes the distinct modes of committing the offense in which some conduct may constitute a crime of violence while other conduct does not. In United States v. Johnson, 680 F.3d 966, the Seventh Circuit explains that when faced with a divisible statute, the court should apply a modified categorical approach in which the court may look to the judicial record for the limited purpose of determining under which part of the statute the defendant was charged.

Here if the court were to apply the modified categorical approach, it becomes apparent from a review of the charging document and court records in the defendant's home invasion case that he was charged under Section 12-11(a)(1), as the information in that case specifically alleges that the defendant entered the dwelling place of Tronina K. Felton and while armed with a dangerous weapon, a pistol, threatened the imminent use of force upon Tronina K. Felton. Because Section 12-11(a)(1) clearly falls within the definition of a crime of violence pursuant to Section 4B1.2(a)(1) of the Guidelines Manual, the modified categorical approach demonstrates that the defendant's conviction for home invasion qualifies as a predicate offense for purposes of the career offender guideline.

This court also specifically noted that because Rucker's "conviction for home invasion qualifies as a crime of violence under Section 4B1.2(a)(1) for purposes of the career offender classification . . . there is no need to resort to the residual clause of Section 4B1.2(a)(2) . . ." Thereafter, this court found the applicable advisory guidelines range to be 210 to 240 months. The government recommended a 240-month sentence to run consecutive to the 87-month sentence previously imposed. Defense counsel recommended that the sentence should be served concurrently with the previously imposed sentence because various mistakes led to the situation which gave Rucker the opportunity to attack Alvarez. This court sentenced Rucker to the statutory maximum sentence of 240 months to be served consecutively to his 87-month sentence for his narcotics offense.

On direct appeal, the Seventh Circuit affirmed Rucker's conviction and sentence after

3

rejecting his three appellate contentions including that he was deprived of the effective assistance of trial counsel when counsel stipulated that Alvarez's testimony contributed to an increase in his narcotics sentence. United States v. Rucker, 766 F.3d 638, 641 (7th Cir. 2014). With regard to this contention, the Seventh Circuit held that:

> We see no evidence that trial counsel departed from professional norms in stipulating that Alvarez's testimony contributed to an increase in Rucker's sentence. The purpose of Alvarez's testimony was to establish relevant conduct (i.e., additional amounts of narcotics for which Rucker was responsible beyond the two kilograms that he had acknowledged in pleading guilty) that would increase Rucker's offense level and with it his advisory sentencing range. The extent of that conduct was a subject of dispute between the defense and the government until Alvarez testified. That Alvarez was examined and cross-examined extensively demonstrates his importance to that determination. Rucker's counsel described the eventual agreement as to the additional amount of cocaine as a "compromise," and we note that it came to pass after the court, at the close of Alvarez's testimony, indicated that it was not prepared to altogether disregard his testimony as incredible, as the defense had suggested it should. It is thus a fair inference that the eventual agreement between the parties as to Rucker's relevant conduct came to pass in part (if not in whole) because of Alvarez's adverse testimony. Rucker has given us no reason to believe that he had a plausible factual basis on which to dispute the notion that Alvarez's testimony contributed to an increase in his sentence, nor has he given us reason to second-guess counsel's strategic decision to stipulate to the nexus, which obviated the need for testimony explaining the context and significance of Alvarez's testimony and thus confined to a minimum prejudicial evidence regarding Rucker's history of narcotics trafficking.

Id. at 647 (citations omitted).

In his § 2255 motion, Rucker raises four grounds for relief: (1) ineffective assistance of appellate counsel in arguing ineffective assistance of trial counsel on direct appeal; (2) ineffective assistance of trial counsel by stipulating that Alvarez's testimony at sentencing was truthful and resulted in an increased sentence; (3) ineffective assistance of trial counsel in failing to locate potential witnesses and subpoena exculpatory evidence; and (4) ineffective assistance of trial and appellate counsel for not arguing that his classification as a career offender was unconstitutional.

Rucker has attached the affidavits of Brian Cain and David Powell who were fellow detainees at the Ogle County Jail. Cain swears that:

> [A]n individual previously unknown to me, entered the holding cell. RUCKER indicated this person to be CELESTINO ALVAREZ-MONTEJANO . .
>
> ALVAREZ initiated a dialogue with RUCKER by stating 'what's up' to which RUCKER responded something to the effect, 'I don't talk to people who get on the stand.' A short verbal exchange ensued between RUCKER and ALVAREZ wherein ALVAREZ inferred RUCKER was a liar stating 'that's your side of the

story.' . . . .

RUCKER got up from where we were sitting and approached ALVAREZ. From my vantage point it appeared RUCKER had his hand on ALVAREZS' shoulder and was walking him to the gate. It appeared ALVAREZ shrugged RUCKER'S hand off his back which gave the impression RUCKER pushed ALVAREZ causing him to fall backward . . . .[2]

At no time do I recall RUCKER making statements to the effect: 'that's what happens when you get on the stand'; 'he shouldn't have testified against me,' or any other statement to indicate the altercation was in retaliation for the testimony given against RUCKER.

As for Powell, he does not claim to have been in the holding cell at the relevant time but swears that:

In our limited discussions surrounding the government[']s witness ALVAREZ, at no time did RUCKER express animosity nor any desire to cause ALVAREZ harm for the testimony he ultimately provided against RUCKER. Based on these same discussions, RUCKER only expressed disappointment that ALVAREZ would embellish his testimony to subvert the truth and relieve himself (ALVEREZ) [sic] from his own criminal liability.

The government argues that each ground of Rucker's § 2255 grounds lacks merit and that he has failed to present factual issues or disputes requiring an evidentiary hearing. The government therefore urges this court to deny Rucker's motion in its entirety.

## II. DISCUSSION

Relief pursuant to § 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, habeas relief under § 2255 is "reserved for extraordinary situations." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996). Claims that were raised on direct appeal and rejected or that could have been raised on direct appeal and were not are procedurally defaulted. See United States v. Peleti, 576 F.3d 377, 383 (7th Cir. 2009) (noting that once a claim has been rejected on direct appeal the law-of-the-case doctrine bars the defendant from raising it in a § 2255 motion).

To succeed on an ineffective-assistance-of-counsel claim, a movant must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). To satisfy the first prong, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A district court's "analysis begins with the strong presumption that the defendant's attorney rendered adequate

---

[2]This portion of Cain's affidavit is curious in light of the fact that the video tape presented to the jury clearly shows Rucker slam Alvarez's head into the wall and at trial Rucker never took the position that he did not do so. Instead, Rucker argued only that he lacked the intent to retaliate based on Alvarez's testimony.

representation of his client." United States v. Meyer, 234 F.3d 319, 325 (7th Cir. 2000) (quotation marks omitted). Therefore, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006). If a defendant is unable to satisfy either prong of the Strickland test, then the court does not need to address the matter further. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

### A. Ineffective Assistance of Appellate Counsel

Rucker contends that his appellate counsel was ineffective for arguing on direct appeal that Rucker's trial counsel was ineffective when he stipulated that Alvarez provided truthful testimony at Rucker's sentencing which contributed to Rucker receiving an additional 24 months of imprisonment. Rucker stresses that in its opinion affirming his sentence and conviction on direct appeal, the Seventh Circuit made clear that:

> A claim that a defendant was deprived of the effective assistance of trial counsel is one that is ill-suited to resolution on direct appeal, as it typically requires evaluation of the circumstances that confronted counsel and the reasoning that informed his decisions and defense strategy. Consequently, a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose, as the record is unlikely to lend sufficient support to such a claim, and by raising it on direct appeal, the defendant will be foreclosed from pursuing the same claim on collateral review. At oral argument, we asked Rucker's counsel whether she really wished to pursue this claim on direct appeal, and counsel confirmed that she does. So be it.

Rucker, 766 F.3d at 646-47 (citations and quotation marks omitted).

However, in order to show that his appellate counsel's decision to raise the issue on direct appeal was ineffective, Rucker must demonstrate that if the issue were not raised on direct appeal there is a reasonable probability that he would have obtained relief by instead raising the issue in a § 2255 motion. See Strickland, 466 U.S. at 688, 694. In an effort to do so, Rucker only states that the Seventh Circuit was confined to the proceedings held before the district court on the record which did not contain the extraneous communications between him and his trial counsel concerning the stipulation. However, Rucker has not informed the court through affidavit or otherwise what these extraneous communications were or how they would demonstrate deficient performance. That being the circumstance, all that is left is the Seventh Circuit's conclusion that entering into the stipulation was not ineffective. Thus, it is not appropriate to afford Rucker relief on this ground.[3]

---

[3]For the first time in his reply brief, Rucker contends that the stipulation was entered into by his trial counsel outside of his presence. However, it has long been established that arguments in support of a § 2255 motion that are raised for the first time in a reply brief are waived. Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998). This is true even if the movant is proceeding pro se. Id. This is because the government does not have an opportunity to respond to the new arguments in the reply brief. Id. In any event, the contention is belied by the record which shows that Rucker was present in court at the pre-trial conference when the stipulation was first presented to the court and did not object. He was also present at trial when the stipulation was read to the jury.

## B. Ineffective Assistance of Trial Counsel

Rucker contends that his trial counsel was constitutionally ineffective in entering into the stipulation with the government that Alvarez provided truthful testimony against him at his sentencing hearing which contributed to his receiving an additional 24 months' imprisonment. However, as noted above, the Seventh Circuit explicitly rejected this very contention on direct appeal. Rucker, 766 F. 3d at 646-47. As a result, the law-of-the-case doctrine bars relitigation of this issue through a § 2255 motion. See Peleti, 576 F.3d at 383.

Rucker also contends that his trial counsel was ineffective in failing to perform an independent investigation, locate potential witnesses, and subpoena relevant exculpatory evidence including recordings of telephone conversations and witness statements. The bulk of this contention is based on speculation that there were exculpatory witnesses or other admissible evidence that counsel's investigation would have revealed. See Wright v. Gramley, 125 F.3d 1038, 1044 (7th Cir. 1997) ("It is firmly established that in order to succeed on a failure to investigate claim, the petitioner must demonstrate what the attorney would have discovered had a proper investigation occurred, as well as what evidence would have been introduced at trial.").

Rucker has not shown that the failure to call Powell as a trial witness was deficient. Based on the affidavit Powell submitted, he would only testify as to what he heard Rucker say as well as what Rucker did not say. The failure of trial counsel to call Powell as a witness would not be deficient performance if Powell's testimony would not have been admissible as evidence. Rucker has not shown that Powell's testimony does not violate the rule against hearsay. See Fed. R. Evid. 802. Before engaging in a hearsay analysis it is important to note that Powell's use of the words "expressed disappointment that Alvarez would embellish his testimony to subvert the truth and relieve himself from his own criminal liability" is only Powell's conclusion or summarization of what Rucker said and thus, would be inadmissible on that basis alone. Even so, it appears that Powell's rendition of what Rucker said constitutes inadmissible hearsay. See Fed. R. Evid. 801(d)(2) (providing that statement by party opponent must be offered against an opposing party to qualify as non-hearsay). The court has also considered whether Rucker's purported statement, that he only expressed disappointment at Alvarez, could qualify as a then-existing mental or emotional condition under Federal Rule of Evidence 803(3). "Three requirements must be satisfied for a statement to be admissible under the state of mind exception to the hearsay rule: (1) the statement must be contemporaneous with the mental state sought to be proven; (2) it must be shown that declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case." United States v. Neely, 980 F.2d 1074, 1083 (7th Cir. 1992). First, in his affidavit, Powell does not reveal when during the five months that he was incarcerated with Rucker that Rucker said he was disappointed with Alvarez, much less that he said so contemporaneously with Rucker's attack on Alvarez. Second, because the timing of the purported statement is not established, there is no showing that Rucker lacked time to reflect before making the statement. Third, although Rucker's purported statement may be relevant to show that he had bad feelings toward Alvarez, it is not relevant to show a lack of animosity. Thus, Powell's statement as to what Rucker said does not qualify as a hearsay exception.

Moreover, Powell admits to having only "limited discussions" with Rucker concerning Alvarez. Thus, the probative value of what Rucker said is minimal. As to what Rucker did not say

7

to Powell, that is, Rucker did not express animosity or a desire to cause harm to Alvarez, it stands to reason that Rucker's purported silence as to animosity toward Alvarez does not show that he lacked such animosity particularly where, as here, Powell has limited interaction with Rucker.

Even if Powell's statements were admissible, Rucker suffered no prejudice by the absence of this testimony because the disappointment that Powell claims Rucker had with Alvarez is consistent with an intent to retaliate, not a lack of animosity. Therefore, Rucker has not shown a reasonable probability that the outcome of the trial would have been different had his trial counsel called Powell as a witness.

Also, there was no deficient performance or resulting prejudice in the failure to subpoena recordings of jail telephone conversations Rucker had with Alyssa Glover after he was sentenced for the cocaine offense wherein he purportedly expressed no ill-feelings or animosity toward Alvarez. What Rucker told Glover would be inadmissible hearsay, see Fed. R. Evid. 801(d)(2), and for a lack of showing of the three elements discussed above would not qualify as a then-existing mental condition. See Fed. R. Evid. 803(3). In any event, that Rucker did not express any ill-feelings or animosity toward Alvarez does not show that he lacked such ill-feelings or animosity.

Furthermore, there was also no deficient performance or resulting prejudice in counsel's failure to call a jail guard to whom Rucker purportedly made statements indicating he had no problem being transported with Alvarez. Such a statement is inadmissible hearsay, see Fed. R. Evid. 801(d)(2), and does not meet the requirements of Rule 803(3) because there is no indication that Rucker's statement to the jail guard was made contemporaneously with the attack on Alvarez. In fact, this statement was purportedly made on November 8, 2012, more than a month before Rucker attacked Alvarez. The statement also has limited probative value because not having a problem with being transported with Alvarez would not inform the finder of fact whether Rucker actually lacked animosity or just desired an opportunity to retaliate. The court also notes that Rucker argues only that his conversations with Glover and the jail guard "may have impacted the jury," not that there is a reasonable probability that but for counsel's failure to subpoena the recordings or call the jail guard as a witness, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.

Rucker also argues that his trial counsel was deficient in failing to locate and interview the six other individuals who were in the holding cell when he attacked Alvarez. However, Rucker has not met the requirement of demonstrating what his attorney would have discovered had a proper investigation occurred, or what evidence would have been introduced at trial. See Wright, 125 F.3d at 1044.

Rucker has also failed to demonstrate deficient performance or prejudice–i.e. that there was a reasonable probability that the result of the proceeding would have been different–with respect to trial counsel's failure to call Cain as a witness at trial. With regard to deficient performance, the parties agree that prior to trial Rucker's counsel had an FBI 302 report documenting that after the incident in the holding cell, Cain told an FBI agent that Rucker asked Alvarez, "why did you get on the stand and tell on me?" Rucker has presented nothing to overcome the presumption that, as a matter of trial strategy, it was not objectively unreasonable to conclude that calling Cain would not have aided Rucker's defense. See Pruitt v. Neal, 788 F.3d 248, 270 (7th Cir. 2015) ("Courts indulge

8

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quotation marks omitted)), petition for cert. filed, 84 U.S.L.W. 3241 (U.S. Oct. 26, 2015) (No. 15-542).

As to prejudice, in his affidavit, Cain swears that Rucker told Alvarez something slightly different: "I don't talk to people who get on the stand." Nevertheless, this testimony that Cain would have purportedly provided at trial is not materially different than the testimony of Walton and Farrell and is still contrary to Rucker's defense because it would have allowed the jury to infer that Rucker had the intent to retaliate against Alvarez for testifying against him. See Rucker, 766 F.3d at 644 ("What matters is that each of the witnesses recalled Rucker making a remark that highlighted Alvarez's status as a cooperating witness."). Further, a failure to remember what else Rucker said does not inform on the issue of what Rucker actually said but, rather, it is a statement about Cain's memory. For these reasons, there is an insufficient basis to provide Rucker with § 2255 relief on the ground that his trial counsel failed to provide him with effective assistance.

### C. Ineffective Assistance of Trial & Appellate Counsel

Rucker also contends that he was denied the effective assistance of counsel when neither trial nor appellate counsel argued that application of the career-offender enhancement to his sentencing guidelines range was unconstitutional based on the argument later advanced and sustained in Johnson v. United States, 576 U.S. ____, 135 S. Ct. 2551 (2015).

It is important to note that Johnson addressed the residual clause of 18 U.S.C. § 924(e), the Armed Career Criminal Act, not the career offender guideline enhancement of U.S.S.G. § 4B1.1. However, the Seventh Circuit has assumed without specifically deciding that the Johnson holding would also apply to the career-offender enhancement based on the virtually identical wording and interpretation of the respective residual clauses. Ramirez v. United States, 799 F.3d 845, 856 (7th Cir. 2015). Following this guidance, this court will assume that the holding in Johnson should be applied by analogy to the enhancements under the career-offender guideline.

Nevertheless, Rucker has not shown that failing to raise a Johnson-type argument in his case was deficient performance or that he thereby suffered prejudice. It has long been held that "[c]ounsel is not ineffective for failing to raise meritless claims." Warren v. Baenen, 712 F.3d 1090, 1104 (7th Cir. 2013); Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). In Johnson, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. In this case, however, it is clear that Rucker's home invasion conviction qualified as a predicate crime of violence under U.S.S.G. § 4B1.2(a)(1), which is analogous to the elements clause of § 924(e)(2)(B)(i), not under U.S.S.G. §4B1.2(a)(2), which is analogous to the residual clause in § 924(e)(2)(B)(ii). Consequently, Rucker is not entitled to relief under § 2255 based on appellate

and trial counsel's failure to advance a Johnson argument.[4]

### D. Motions for an Evidentiary Hearing and to Appoint Counsel

Having carefully reviewed the motion and briefs, the court concludes that an evidentiary hearing is not needed as the grounds set forth by Rucker can be resolved on the existing record which conclusively demonstrates that he is not entitled to § 2255 relief. See Rule 8(a) of Rules Governing Section 2255 Proceedings for the United States District Courts; Koons v. United States, 639 F.3d 348, 355 (7th Cir. 2011) ("[C]ourts may deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." (quotation marks omitted)). Therefore, Rucker's motion for an evidentiary hearing is denied.

Rucker's motion for appointment of counsel is also denied. "A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel." Oliver v. United States, 961 F.2d 1339, 1343 (7th Cir.1992). The court must appoint counsel if it determines that an evidentiary hearing is required to decide the motion. Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because Rucker's motion has been resolved without an evidentiary hearing, appointment of counsel is not required.

### III. CONCLUSION

For the reasons set forth above, the motion to vacate, set aside, or correct the sentence pursuant to § 2255 is denied. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to grant a certificate of appealability. Based on the foregoing analysis, Rucker has not established that reasonable jurists could debate the correctness of the court's decision. Accordingly, the court declines to issue a certificate of appealability.

Date: 12/29/2015

ENTER:

_____

FREDERICK J. KAPALA

District Judge

---

[4]Rucker also advances a cumulative error argument for the first time in his reply brief which is also waived. See Wright, 139 F.3d at 553. Even if not waived the argument is baseless because there were only two trial errors alleged (the others were at sentencing and on appeal) and he has not demonstrated that either was error by itself or in combination, let alone error sufficient to cause his trial to be fundamentally unfair. See United States v. Moore, 641 F.3d 812, 830 (7th Cir. 2011).